277 So.2d 300 (1973)
Earl George DAVIS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 72-376.
District Court of Appeal of Florida, Second District.
April 19, 1973.
Rehearing Denied May 29, 1973.
*301 James A. Gardner, Public Defender, and Elliott C. Metcalfe, Jr., Asst. Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Frank B. Kessler, Asst. Atty. Gen., Tampa, for appellee.
LILES, Judge.
Earl George Davis, Jr., took center stage in the Polk County Criminal Court of Record on May 4, 1970, when the county solicitor filed an information charging him with one count of robbery in violation of F.S. § 813.011, F.S.A., and another count of extortion in violation of F.S. § 836.05, F.S.A. Before that case could be disposed of it again became necessary for the county solicitor to file another information against Earl George "Buster" Davis, Jr., *302 charging him, along with three other Polk County residents, with breaking and entering in one count in violation of F.S. § 810.05, F.S.A., and in another count of petit larceny in violation of F.S. § 811.021, F.S.A.
On September 9, 1970, Earl George Davis, Jr., now known as "Buster," represented by the public defender, Lee R. Horton, appeared before the Honorable Roy H. Amidon. He attempted at that time to plead guilty to the charge of breaking and entering and petit larceny. After establishing Buster to be 20 years of age, the judge made sure that his father, whom he obviously knew personally, had been notified of the hearing. The judge then proceeded to establish beyond any shadow of doubt, as revealed by the record, that Buster was freely and voluntarily pleading guilty; that nothing had been promised him; that he could be tried by a jury and that Mr. Horton would represent him; and he almost begged him not to plead guilty. This, of course, was not to be. Buster said that he was pleading guilty because he was, in fact, guilty. At the conclusion of the hearing, Judge Amidon withheld adjudication and referred him for presentence investigation.
You will recall that the same Buster Davis was informed against back in May 4, 1970, and charged with robbery and extortion. Exactly why the breaking and entering and petit larceny charge made on August 25, 1970, was heard before the robbery and extortion charge, which was filed on May 4, 1970, is not clear from the record. Be that as it may, on November 3, 1970, the same Buster Davis appeared before the Honorable Roy H. Amidon to answer for the robbery and extortion. This time Buster had acquired the services of one of the most capable criminal lawyers in Florida, Jack T. Edmund, Esq. Mr. Edmund informed the court that Buster's mother was present, and from the record she was apprised of the circumstances. In any event, Mr. Edmund advised the court that Buster wished to plead guilty, using the name of Earl George Davis, Jr. Mr. Edmund further advised the court that he recommended Buster plead guilty after reviewing the case. Buster was in the company of one of his accomplices who was before the court at this time. The court was not willing to take Mr. Edmund's representation at face value and began to question both Buster and his accomplices. He advised Buster of the charges and cited the information charging that Buster, on March 22, 1970, unlawfully by force and violence, did feloniously rob, steal and take away from the person or custody of Claude Benton Sutton money or other property, to-wit: money in currency and coin of the United States of the value of $42, the property of Claude Benton Sutton, with intent permanently to deprive the true owner of his property, in violation of F.S. § 813.011, F.S.A. In common parlance this is known as armed robbery. The judge proceeded laboriously to tell Buster what his sentence could be in the event he was guilty, i.e., life in prison. He asked Buster if he understood that and Buster indicated that he did. He then explained in great detail that Buster was also charged in the second offense with verbally and maliciously threatening to injure Claude Benton Sutton in the event that Sutton should tell anybody that he had robbed him. Only he put it in legal lingo and concluded by asking, "Do you understand that"; to which Buster said, "Yes, sir." The judge then told him that the sentence carried a maximum of 20 years in the event he was guilty and that two charges together could constitute life plus 20 years and indicated it would be rather difficult to serve both sentences. He then told Buster that he had the right to be tried by jury. He advised him that the well-known and capable Mr. Edmund would represent him and he would be tried by a jury of his peers. Bear in mind that his mother was present during the entire proceeding.
He admonished Buster that nothing had been promised him and asked him again whether he freely and voluntarily plead *303 guilty, with the full realization of all the consequences. Again Buster said, "I wish to plead guilty and that I understand the consequences. Judge Amidon withheld adjudication and referred him to presentence investigation.
On December 14, 1970, Buster appeared before Judge Amidon for sentencing. He was again represented by Jack T. Edmund, Esq. Judge Amidon informed Buster that in Case No. 70-6614 he was charged with robbery and extortion; and that he had, on November 3, 1970, pleaded guilty and was referred for presentence investigation, and that he now adjudicated him guilty of this offense. The judge related that in Case No. 48-107 Buster pleaded guilty to the charge of breaking and entering and he had been placed on probation on the 18th day of November, 1968 for a period of five years; that there was an affidavit for violation of probation filed in February, 1969, and that he was brought in on that affidavit and the affidavit had been set aside and he was again placed on probation. At the sentencing, another affidavit had been filed charging Buster with violation of probation; and the judge further stated that, "as to the case of robbery and extortion, as I say, the Court adjudges you to be guilty of that and do you have anything to say why sentence should not be imposed upon you at this time?" Buster said he did not. The judge went on to explain to him again that he was sentencing him on the charge of robbery and extortion, Case No. 70-6614, to serve ten years; and in the case of breaking and entering, Case No. 48-107, he would sentence him to three years and "let it run concurrently with the 10 years." In the other one, where Buster was charged with breaking and entering and petit larceny, he said he would "sentence him on that to five years to run all of them together to get rod (sic) of it so you can have it all behind you."
The record reveals at page 22 that Judge Amidon signed the judgment and sentence in the case of robbery and extortion and it reads:
"THEREFORE, the Court adjudges you to be guilty of said offenses, and sentences you, for your said offense as to Count One, to be confined in the State Prison of Florida at hard labor for a term of Ten (10) Years; and for your said offense as to Count Two, to be confined in the State Prison of Florida at hard labor for a term of One (1) Year, said sentence to run concurrently with Count One, and to be given credit for One Hundred and Twenty-One (121) Days spent in the County Jail awaiting sentence."
The record also reveals at page 23 that Judge Amidon entered judgment and sentence on the charge of breaking and entering with intent to commit a misdemeanor and petit larceny, to which Buster had previously pleaded guilty. The order said in part:
"THEREFORE, the Court adjudges you to be guilty of said offenses, and sentences you to be confined in the State Prison of Florida at hard labor for a term of Five (5) Years, and said sentence to run concurrently with Case Number 70-6614, as to Count One; and for your offense as to Count Two, be confined in the County Jail of Polk County, Florida at hard labor for a term of Six (6) Months, said sentence to run concurrently with case number 70-6614."
Insofar as we know, Buster has been in Raiford since he was transported there subsequent to December 14, 1970. This is April, 1973, and he still does not have this case behind him as Judge Amidon admonished him to do. Or to put it more bluntly, he still wishes this court not to believe that he freely and voluntarily admitted in the presence of the public defender in one case and private counsel in the other that he really did commit these crimes.
Florida Appellate Rules require, and have for some time, that a direct appeal must be brought in the form of a "notice of appeal" and the same should be done within 30 days after entry of sentence. *304 See, F.A.R. 6.2, 32 F.S.A. This, of course, was not done within 30 days of December 14, 1970, even though Buster was represented by competent, capable and outstanding criminal counsel. We can see, after reviewing this entire record, why Mr. Edmund did not take an appeal. He had investigated the case along with his associate. He had talked with Buster as well as with his mother and had concluded that he had no defense and having no defense he had nothing to appeal. However, he obviously had not read Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969); nor did he foresee that this court would expect the trial judge, after a thorough determination of the voluntariness of the plea, to nevertheless inform Buster that he had a right to appeal. See, Baker v. State, 224 So.2d 331 (1st D.C.A.Fla. 1969).
Baggett v. Wainwright, supra, does violence to the rule, requiring a "notice of appeal" to be filed within 30 days, but that is understandable. It was written for Baggett. It has been applied to this case. Baggett was tried by a jury; he did not plead guilty as did Buster; Baggett was represented by privately employed counsel, but was unable to retain counsel for purposes of appeal. Baggett was informed that an attorney would be appointed for him to prosecute the appeal. This was simply not done. Even though Buster's case can be readily distinguished from Baggett's, this court granted him a full appeal.
This came about in the following manner: In September of 1971, Buster filed a motion to vacate sentence under CrPR 1.850 (now 3.850), 33 F.S.A. He asserted that the trial judge failed to advise him of his right to appeal pursuant to CrPR 1.670(2). The motion was denied. This, of course, transpired long after the 30 days for taking a direct appeal had passed. Nevertheless, this court entered a per curiam opinion on April 12, 1972, at Fla.App., 260 So.2d 547, stating: "Appeal dismissed without prejudice to appellant's right to seek relief by habeas corpus pursuant to Baggett v. Wainwright, Fla. 1969, 229 So.2d 239." However, in that opinion, this court attempted to advise the appellant to consider that he was adjudicated pursuant to a plea of guilty and that all he was alleging as error is that he was denied an appellate review. The opinion ended with the statement that "If the record in the trial court would reveal the propriety of the guilty plea, Davis' appeal would be frivolous."
This, however, did not deter Buster; it only invited additional litigation. Following this court's opinion, he filed a writ of habeas corpus in May, 1972. This time this court appointed the Honorable Gunter Stephenson as its commissioner with directions "to take such testimony as may be deemed necessary or proper concerning the allegations of the petition that he [Buster] has been denied the right of appeal and report the same to this court together with his findings and recommendations."
On July 6, 1972, Judge Gunter Stephenson reported his recommendations and found from the testimony adduced before him the following:
"I find that the petitioner was represented by highly competent counsel, privately employed, and that he was advised of the nature of the charges against him and the consequences of a guilty plea. His guilty plea was entered after conferences with his attorney, and was entered willfully, voluntarily and intelligently.
"The propriety of his plea has been clearly established and any appeal would be frivolous. To say that he was wrongfully denied the right of appeal is ridiculous."
That, however, did not deter this court from pushing full steam ahead with a full appeal. On September 15, 1972 this court entered its order saying:
"ORDERED that the Petitioner, EARL G. DAVIS, be and he is hereby afforded the opportunity in this Habeas Corpus proceeding of full appellate review by *305 this Court of the judgment and sentence of the Criminal Court of Record for Polk County, Florida, of December 14, 1970, by which he was adjudged guilty of robbery and extortion in Criminal Court Case No. 70-6614 and breaking and entering with intent to commit a misdemeanor in Criminal Court Case No. 70-12152."
and ordered that an attorney be appointed to represent him. This was done without even a comment on Judge Stephenson's recommendation.
In due course the public defender was appointed to represent Buster and he has filed, after some extensions of time, his brief. The record has been certified here and this author has spent many hours pouring over the voluminous trivia that has been asserted. I label it trivia for the simple reason that a layman could have determined that Buster freely and voluntarily, and with knowledge of the consequences, pleaded guilty, because, in fact, he was guilty.
This all occurred in 1970, some three years ago. Since then the Supreme Court of Florida, in Cone v. State, Case No. 42,760, filed March 9, 1973, said:
"The reasonable inference to be drawn from the two counts of the information is that the two violations charged, robbery under F.S. Section 813.011, F.S.A., and the displaying or using of a firearm under F.S. Section 790.07(2), F.S.A., occurring on June 10th, 1971, were a part of the same transaction or crime involving the robbery of Barbara Kash. Having ascertained from the record proper the ostensible fact that the two crimes charged were a part of the same criminal act, we adverted to the transcript of testimony and a cursory inspection thereof confirmed the conclusion we drew from the language of the information that the two crimes charged were facets of the same criminal act.
"On authority of Simmons v. State [151 Fla. 778, 10 So.2d 436] and Easton v. State [Fla.App., 250 So.2d 294], supra, the cause is remanded with directions that the sentence below be amended by eliminating therefrom the part sentencing defendants to `twenty years as to possession of firearm while engaged in a criminal offense.'"
Cone indicates that a criminal defendant may be convicted but not be sentenced, even concurrently, on two offenses which arise out of the same transaction. Buster's sentences on the two offenses of robbery and extortion were to run concurrently and also the sentences for the breaking and entering and petit larceny were to run concurrently with the ten-year sentence for robbery. Buster has raised as error only the sentences related to the offense of robbery and extortion. In order to avoid further consideration of this case at a later date, we have also considered the illegality of the sentences on the other two charges. It should be noted that robbery carries a maximum sentence of life imprisonment. The trial judge only sentenced Buster to ten years; and, in addition, the sentences for the three other offenses were made to run concurrently with the ten-year sentence.
Under authority of Cone v. State, supra, we will oblige Buster by remanding the case for the purpose of instituting a sentence only on the highest offense of armed robbery and breaking and entering with intent to commit a misdemeanor. It appears that both pairs of charges represent offenses arising out of the same transaction. Every armed robbery would give rise to a charge of extortion, since joint offenses anticipate the use of force, threats or violence to force another to do or not to do something against his will. As to the breaking and entering and petit larceny charges, it must be presumed that the perpetrator breaks and enters with a purpose and that the accomplishment *306 of that purpose (the petit larceny) can only be classified as part of the same criminal act. To the extent this holding may conflict with our prior decision in Footman v. State, 203 So.2d 356 (Fla.App. 1967), we recede from that decision. The "same transaction" doctrine cannot logically hinge upon the facile test of whether the two transactions fall within the same chapter of the Florida Statutes as the state suggests. Therefore, on remand Buster's sentence will still be ten years as it was in the beginning, albeit without the concurring sentences on the offenses of extortion and petit larceny.
Three years have gone by and Buster is still not convinced that he was telling the truth when he told the judge he committed the crimes.
The public defender urges also that Buster should get a new trial because he did not intelligently waive certain constitutional rights and he maintains that Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), gave him the right to be informed that he would have an opportunity to confront his accuser if he went to trial and that he could not be compelled to testify against himself. We must admit that the record is silent as to these exact words being uttered in the presence of Buster; but again your attention is drawn to the fact that Buster was represented by competent, private counsel. He was told that he could have a jury trial and many other things too numerous to repeat again.
We do not read Boykin and Brady as a mandate to pronounce the exact words he has the "opportunity to confront his accusers if he went to trial and that he could not be compelled to testify against himself." It is true that the record reflects that Judge Amidon said he could get life for robbery plus 20 years for extortion; but the record also reveals that Judge Amidon said that such a sentence could not be served, and in truth and fact gave him only ten years. He got less, much less, than he could have gotten and should not be heard to complain here.
In any event, in Hill v. State, 256 So.2d 239 (2d D.C.A.Fla. 1972), this court uttered finally a truism, "As to his right to `not to testify against himself,' suffice to say that he did not `testify against himself' because there was no trial."
In Kelly v. State, 254 So.2d 22 (1st D.C.A.Fla. 1971), the First District said:
"In our view, the record of the proceedings when taken in its totality justifies the acceptance of the guilty plea. That the court itself did not advise as to appellant's right to remain silent or right to confrontation does not mean that the plea was uncounselled or tendered unknowingly. Boykin does not require a step-by-step recitation of each and every of the defendant's rights where the record reflects, as it did here, that counsel has explained the consequences of the guilty plea to the defendant."
Therefore, appellant's argument that he did not freely and voluntarily and with knowledge of the consequences plead guilty is without merit. We have gone into great detail regarding this case, not only to convince Buster that he got the best that could be expected in our system, but also to demonstrate the hideous web that our judicial system had spun around itself. We have been so anxious to protect the guilty that we have done a great disservice to the innocent. We give lip service to the rule which requires an appeal to be filed within 30 days and we vitiate it by misconstruing Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969).
We hasten to appoint a commissioner and then we ignore his recommendation. We say we are overburdened and then we spend hours upon hours reviewing what is obvious. I am constrained to agree with Justice Potter Stewart, when he said:
"Why the case was heard, is a mystery to me  particularly at a time when the *307 court is thought by many to be burdened by too heavy caseload." (The Tampa Morning Tribune, March 29, 1973, p. 9-D.)
It is cases such as this that not only defy the rules of criminal procedure but try the patience of judges who thought when they donned the robes they could make some addition to jurisprudence only to find hopeless frustration.
I do not blame Buster for trying. The fault lies at the door of this court in not determining at an early date that Buster had nothing to appeal, which would in any way affect the time he must serve for the crimes he said he committed.
Remanded for resentencing.
MANN, C.J., and McNULTY, J., concur.